# UNITED STATES DISTRICT COURT
for the
**Western District of Kentucky**
**Louisville Division**

| | |
|---|---|
| Brian Sanders )<br>   *Plaintiff* )<br> )<br>v. )<br> )<br>Trans Union, LLC )<br>   *Defendant* )<br>Serve: )<br>   The Prentice Hall Corp. System )<br>   421 West Main Street )<br>   Frankfort, KY 40601 )<br> )<br>Brooks Law Office )<br>*Assumed name for* )<br>Stephen Brooks, P.S.C. )<br>   *Defendant* )<br>Serve: )<br>   Stephen A. Brooks )<br>   105 S Sherrin Ave )<br>   Louisville, KY 40207 )<br> )<br>Louisville Recovery Service, LLC )<br>   *Defendant* )<br>Serve: )<br>   Cindy Habeeb )<br>   1939 Goldsmith Lane, Suite 135 )<br>   Louisville, KY 40218 )<br>_____ ) | Case No. 3:17-CV-540-DJH |

## COMPLAINT and DEMAND FOR JURY TRIAL

### INTRODUCTION

1. This is a complaint for damages against Trans Union, LLC for its violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"); and for damages against Brooks Law Office and Louisville Recovery Services, LLC for its violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA").

## JURISDICTION AND VENUE

2. Jurisdiction of this court arises under 15 U.C.S. § 1331, 15 U.S.C. § 1681p, and 15 U.S.C. § 1692k. Venue is proper, because many the nucleus of operative facts and relevant events that affected and/or damaged Plaintiff as a consumer occurred within Jefferson County, Ky., which is located within this District.

## PARTIES

3. Plaintiff Brian Sanders is a natural person who resides in Jefferson County, Ky. and a "consumer" within the meaning of the FCRA and FDCPA.

4. Defendant Trans Union, LLC ("Trans Union") is a foreign limited liability company, with its principal place of business located at 555 West Adams, Chicago, IL 60661. Trans Union has registered to do business with Kentucky Secretary of State. Trans Union is a "consumer reporting agency" within the meaning of the FCRA.

5. Defendant Brooks Law Office ("Brooks") is an assumed name for Stephen Brooks, P.S.C. who regularly collects debts due or asserted to be due to another business or other legal entity, with it principal place of business located at 105 S. Sherrin Avenue, Louisville, KY 40207.

6. Defendant Brooks principal purpose is the collection of consumer debts and Brooks regularly attempt to collect debts owed or due or asserted to be owed or due another, and is a "debt collector" within the meaning of the FDCPA, as defined by 15 U.S.C. § 1692a(6). Brooks is also a "furnisher" of information within the meaning of the FCRA.

7. Defendant Louisville Recovery Service, LLC ("LRS") is a third-party debt collector, whose principal office is located at 3207 Oriole Drive, Louisville, KY 40213.

8. LRS's principal purpose is the collection of debts and LRS does regularly collect or attempt to collect debts owed or due or asserted to be owed or due another, and is a "debt collector" within the meaning of the FDCPA, as defined by 15 U.S.C. § 1692a(6). LRS is also a "furnisher" of information within the meaning of the FCRA.

## STATEMENT OF FACTS

I.  **Facts Concerning Louisville Recovery Service, LLC and Trans Union, LLC**

9. Like many of his fellow Americans, Mr. Sanders is keenly aware of the importance of his credit score.

10. As explained on Bankrate.com, a person's credit score is important to many major life events: including housing, employment, and credit:

> Today's economy runs on credit. If you want to get a mortgage loan for a house or a student loan to pay for college, or if you just want to put your lunch on a credit card, a company is extending credit to you.
>
> Your creditworthiness is defined by your three-digit credit score and is the key to your financial life. Good credit can be the make-or-break detail that determines whether you'll get a mortgage, car loan or student loan. On the other hand, bad credit will make it more difficult for you to get a credit card with a low interest rate and it will make it more expensive to borrow money for any purpose, says Liz Pulliam Weston, author of "Your Credit Score."
>
> But even if you're not in the market for a loan, good credit can have a major impact, Weston says.
>
> "Your credit information can be a factor in whether or not you can rent a nice apartment, how much you pay for insurance or whether or not you can get a job," she says. Landlords, insurers and employers frequently use credit information as a litmus test to see if the people they are dealing with are reliable and responsible.
>
> Bad credit can suggest you're a risky bet. While bad credit may only show the details of how you deal with debt, some will extrapolate the characteristics from your financial life to other situations and assume that your bad credit implies that you may be just as irresponsible driving a car, taking care of an apartment or showing up for a job, Weston notes.
>
> Good credit can signify that your financial situation—and the rest of your life—is on the right track.[1]

11. In an effort to improve his credit score and rating, Mr. Sanders recently reviewed his Trans Union credit report from the Credit Karma website in late May or early June of 2017.

12. Mr. Sanders discovered four collection accounts furnished by one PSI Louisville, Inc. ("PSI") in connection with alleged medical debts owed to Physicians in Emergency Medicine ("PEM").

---

1. http://www.bankrate.com/finance/credit-cards/why-is-good-credit-so-important.aspx

13. The four PSI medical debts at issue were each incurred for personal, family, or household, which makes all four PSI debts a "debt" within the meaning of the FDCPA.

14. The first PSI debt had a last-reported date of August 19, 2014 with a current balance of $590 and original balance of $575.

15. Upon information and belief, the $15.00 increase in the balance due on the debt constitutes the addition of fees and/or interest that neither PSI nor PEM had any legal right to recover from Mr. Sanders.

16. The second PSI debt had a last-reported date of April 28, 2014 with a current balance of $439 and original balance of $354.

17. Upon information and belief, the $85.00 increase in the balance due on the debt constitutes the addition of fees and/or interest that neither PSI nor PEM had any legal right to recover from Mr. Sanders.

18. The third PSI debt also had a last-reported date of April 28, 2014 with a current balance of $410 and original balance of $374.

19. Upon information and belief, the $36.00 increase in the balance due on the debt constitutes the addition of fees and/or interest that neither PSI nor PEM had any legal right to recover from Mr. Sanders.

20. The fourth PSI debt also had a last-reported date of April 28, 2014 with a current balance of $546 and original balance of $510.

21. Upon information and belief, the $36.00 increase in the balance due on the debt constitutes the addition of fees and/or interest that neither PSI nor PEM had any legal right to recover from Mr. Sanders.

22. Mr. Sanders did not recognize PSI and decided to Google the entity.

23. This search occurred either in late May 2017 or early July 2017.

24. Mr. Sanders's Internet search uncovered a web page that noted that PSI is a defunct legal entity without power to do business in Kentucky or anywhere else in the country.

25. PSI filed for Chapter 7 Bankruptcy relief on May 15, 2015 in Case No. 15-31649-jal.

26. The Bankruptcy Court entered a final order and decree in the case on November 18, 2015, which officially ended PSI as an ongoing business.

27. Further, the Kentucky Secretary of State administratively dissolved PSI as a legal entity on October 1, 2016.

28. So, the information concerning PSI on Mr. Sanders's credit report is inaccurate and false, because PSI cannot be assigned the Physicians in Emergency Medicine debts for collection.

29. Upon information and belief, Defendant Louisville Recovery Service, LLC ("LRS") furnished the negative credit information on Mr. Sanders's Trans Union credit report, falsely identifying PSI as the furnisher/collection agency.

30. LRS violated the FDCPA by reporting false credit information about Mr. Sanders.

31. LRS violated the FDCPA by misrepresenting the amount and legal status of medical debts on Mr. Sanders's Trans Union credit report by adding interest and fees to the medical debts that LRS had no legal right to recover from Mr. Sanders.

32. LRS violated the FDCPA by using the name of a business, company, or organization other than LRS's true name.

33. By using PSI as the vehicle to furnish negative credit information to one or more consumer reporting agencies, LRS knowingly, intentionally, and in misleadingly conceals its true identity from consumers such as Mr. Sanders.

34. Mr. Sanders did not learn that LRS was actively hiding behind PSI on his credit report until May or July 2017.

35. Trans Union has been on actual notice that PSI is a bankrupt and defunct legal entity since at least December 2015.

36. Despite this actual notice, Trans Union continues to publish consumer credit reports that include negative credit information purportedly furnished by PSI.

37. Knowingly allowing tradelines furnished by PSI and/or LRS through a PSI subscriber agreement to remain on consumer credit reports like Mr. Sanders's is a breach of Trans Union's duty to of employ procedures designed to maintain the maximum possible accuracy of credit reports it publishes to its users and subscribers.

## II. Facts Relating to Brooks Law Office

38. In a letter dated July 21, 2017, Brooks sent Mr. Sanders a dunning letter.

39. The July 21st letter was an attempt to collect seven (7) medical debts from Mr. Sanders, all of which were originated by PEM.

40. The seven PEM medical debts at issue were each incurred for personal, family, or household, which makes all seven PEM debts a "debt" within the meaning of the FDCPA.

41. The amount on four of the PEM debts are the same as the original balance of the four PEM medical debts on Mr. Sanders's Trans Union Credit Karma credit report.

42. Brooks' July 21st dunning letter states in pertinent part:

> The contracts you signed prior to each treatment contain provisions that expressly authorize additional collection charges on all unpaid account [sic] that are 90 days or more past due, including attorney's fees, expenses, and court costs.

43. The July 21st dunning letter did not include any of the "contracts" referred to in the letter.

44. Mr. Sanders does not recall signing any contract with PEM.

45. Upon information and belief, no contracts between Brian Sanders and PEM exist.

46. Consequently, the seven PEM medical debts listed in the July 21st letter are subject to a five-year statute of limitations for an account or a contract not in writing.

47. Upon information and belief, three of the PEM medical debts listed in the July 21st dunning letter were incurred more than five years before July 21, 2017. Most likely three of the PEM medical debts listed in the July 21st dunning letter were incurred more than seven (7) years before July 21, 2017.

48. Three of the PEM medical debts listed in the July 21st dunning letter were barred by the applicable statute of limitations.

49. The July 21st dunning letter did not advise Mr. Sanders that any of the debts were timed barred or that Brooks would not sue to collect any of the time-barred PEM medical debts.

50. Brooks violated the FDCPA by misrepresenting the amount and legal status of the

seven PEM debts in the July 21st letter, by attempting to collect attorney's fees from Mr. Sanders that neither Brooks nor PEM had any legal right to collect from Mr. Sanders.

## CLAIMS FOR RELIEF

**I.     Claims against Louisville Recovery Service, LLC**

51.    The above-described actions of Defendant Louisville Recovery Service, LLC ("LRS") violated the FDCPA, included but not limited to 15 U.S.C. § 1692e, 15 U.S.C. § 1692f and one or more subsections of each statute.

**II.    Claims against Trans Union, LLC**

52.    Plaintiff Brian Sanders restates ¶¶9-37 as if fully set forth herein.

53.    Defendant Trans Union, LLC ("Trans Union") violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning Mr. Sanders and the PSI tradelines.

54.    Trans Union's conduct, actions and inactions were willful, rendering Trans Union liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs. Trans Union was on clear notice that PSI was a non-existent entity and did not and could not have any accounts or debts placed with it for collection.

**III.   Claims against Brooks Law Office**

55.    The above-described actions of Brooks Law Office violated the FDCPA, included but not limited to 15 U.S.C. § 1692e, 15 U.S.C. § 1692f and one or more subsections of each statute.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Brian Sanders requests that the Court grant him the following relief:

1.    Award Plaintiff the maximum amount of statutory damages against each Defendant;

2.    Award Plaintiff actual damages against each Defendant;

    3.     Award Plaintiff punitive damages against each Equifax and Trans Union for their willful violations of the FCRA as alleged *supra* pursuant to 15 U.S.C. § 1681n;

    4.     Enter an injunction enjoining LRS and Brooks from reporting tradelines as PSI as if furnished by PSI and/or as LRS through a PSI subscriber agreement;

    5.     Award Plaintiff Attorney's fees, litigation expenses and costs;

    6.     A trial by jury; and

    7.     Any other relief to which Plaintiff may be entitled.

Respectfully submitted,

/s/ James H. Lawson
**James H. Lawson**
*Lawson at Law, PLLC*
115 S. Sherrin Avenue, Suite 4
Louisville, KY 40207
Tel:   (502) 473-6525
Fax:  (502) 473-6561
james@kyconsumerlaw.com

James McKenzie
*James R. McKenzie Attorney, PLLC*
115 S. Sherrin Avenue, Suite 4
Louisville, KY 40207
Tel:   (502) 371-2179
Fax:  (502) 257-7309
jmckenzie@jmckenzielaw.com